IN THE CIRCUIT COURT FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

ST. MAARTEN SPIRITS, LTD., a Nevada
corporation,

        Plaintiff,

v.

C. Martin Taylor Customs Broker, Inc., a
Florida corporation, and C. Martin Taylor &
Company, Inc. a Florida corporation, and C.
Martin Taylor, an individual,

        Defendants.

CASE NO.:
DIVISION:

## COMPLAINT

Plaintiff St. Maarten Spirits, Ltd. ("SMS"), sues the defendants C. Martin Taylor Customs Broker, Inc. and C. Martin Taylor & Company, Inc., and C. Martin Taylor (collectively "Taylor"), as follows:

### Parties, Jurisdiction, And Venue

1.    Plaintiff, SMS, is a Nevada corporation with its principal places of business in Nevada. SMS is a United States' importer of a variety of spirits with various alcohol contents.

2.    Defendant C. Martin Taylor is a licensed customs house broker residing at 12985 Curt Drive, Jacksonville, Florida, principally engaged in the business of expediting imported merchandise into the United States, while complying with all applicable United States statutes and regulations.

3.    Defendant C. Martin Taylor & Company, Inc. is a Florida corporation with its principal place of business at 2831 Talleyrand Avenue, Suite 209, Jacksonville, Florida, and is



principally engaged in the business of expediting imported merchandise into the United States, while complying with all applicable United States statutes and regulations.

4. Defendant C. Martin Taylor Customs Brokers, Inc. is a Florida corporation with its principal place of business at 2831 Talleyrand Avenue, Suite 209, Jacksonville, Florida and is principally engaged in the business of expediting imported merchandise into the United States, while complying with all applicable United States statutes and regulations.

5. Venue in this Court is proper pursuant to Section 47.011, Florida statutes, as the cause of action accrued in Duval County, Florida.

**General Allegations**

6. SMS and Taylor entered into a professional services agreement (the "Agreement") under which Taylor agreed to handle, on behalf of SMS, the importation of various alcoholic beverages into the port of Jacksonville, Florida. SMS is without a copy of the Agreement at present.

7. Taylor, as SMS' customs house broker, was required to calculate the excise taxes and duties due on the various alcoholic beverages imported by SMS into the port of Jacksonville, Florida.

8. Taylor represented to SMS that Taylor had superior knowledge and skill with regard to compliance with United States Customs statutes and regulations pertaining to the importation, classification and entering of alcohol beverages.

9. Taylor represented to SMS that Taylor knew how to correctly calculate all excises taxes and duties due based upon the importation of alcohol into the United States.

10. Taylor represented to SMS that in the event Taylor made any inadvertent errors, it/he knew how to properly correct them and that such corrections would be promptly made so that SMS would not be exposed to undue liability.

2

11. Based upon Taylor's representations, SMS and Taylor entered into the written Agreement, pursuant to which Taylor became SMS' customs house broker for the importation of alcohol into the port of Jacksonville, Florida.

12. From November 1997 through July 27, 1998, while acting in Taylor's capacity as SMS' customs house broker, Taylor failed to properly calculate the "proof" liters as required by 19 U.S.C. § 5001, improperly calculating the excise taxes and duties based upon alcohol content instead of the proof.

13. As a result of Taylor's actions, many of SMS's entries to the United States Customs Service ("Customs") understated the proof liters by 50%.

14. Upon learning of Taylor's errors, SMS requested that Taylor immediately remedy them. Taylor responded by purportedly filing "voluntary tenders" with Customs.

15. Customs maintains that "voluntary tenders" do not comply with 19 U.S.C. § 1592(b)(4)'s and 19 C.F.R. §162.74's requirement for a "prior disclosure."

16. Had Taylor properly filed a "prior disclosure" SMS' potential exposure to the assessment of interest and penalties by Customs and an investigation by Customs would have been significantly reduced.

17. As a direct result of Taylor's mistakes and remaining errors, which amounted to a $429,415.78 shortfall, Customs formally investigated SMS, which investigation SMS was compelled to defend.

18. Due to the potential multi-million dollar exposure resulting from Taylor's mishandling of the original excise tax and duty calculations, SMS was forced to hire experienced customs and import counsel to defend SMS in the formal Customs investigation, participate in Customs' importer interview process, re-calculate all entries and to file an appropriate "prior disclosure."

19. SMS' counsel charged SMS a total of over $125,000.00 in attorney's fees, which SMS has been obligated to pay.

3

20. SMS demanded reimbursement for the more than $125,000.00 in attorney's fee liability and requested that Taylor indemnify SMS for any interest and penalties assessed by Customs.

21. Taylor refused to reimburse SMS for the attorney's fees, or any other expenses, liabilities or damages resulting from the Customs investigation.

## COUNT I
### (Breach Of Contract)

22. Plaintiff realleges and incorporates by reference paragraphs 1 through 21, above.

23. In the Agreement, Taylor agreed to act as SMS' customs broker for the importation of a variety of alcoholic beverages into Jacksonville, Florida.

24. The Agreement required Taylor to correctly calculate the amount of excise taxes and duties due on each shipment in accordance with all applicable Customs statues and regulations. The Agreement also required Taylor to promptly correct any errors made and indemnify SMS for any additional liability created by Taylor's acts and/or omissions.

25. Taylor breached the Agreement in the following respects:

- (a) by improperly calculating the excise taxes and duties based on alcohol content instead of the proof;

- (b) by understating the proof liters by 50%;

- (c) by failing to immediately and correctly remedy its errors;

- (d) **by failing and refusing to indemnify SMS;**

- (e) by filing voluntary tenders instead of prior disclosures;

- (f) by failing to act as a reasonably prudent Customs House Broker would have under similar circumstances; and

- (g) by failing to properly handle the importation of alcoholic beverages on SMS' behalf.

26. SMS has, at all times, performed each and every condition, covenant and obligation required of it under the Agreement, except for the performance of such conditions, covenants and obligations which have been prevented or excused.

27. As a direct, proximate and legal result of Taylor's breach of contract, SMS sustained damages in the form of incurred attorneys' fees in an amount to be proven at trial, but which is believed to be in the excess of $125,000.00.

WHEREFORE, SMS requests judgment against the Defendants for compensatory damages, consequential damages, interest, costs, attorneys' fees and any other relief this court deems just and proper.

## COUNT II
### (Professional Negligence)

28. Plaintiffs realleges and incorporates by reference paragraphs 1 through 21, above.

29. As SMS's licensed customs house broker, Taylor owed SMS a duty of care to perform its services in accordance with the manner in which a reasonably careful licensed customs house broker would have under similar circumstances.

30. Taylor failed to exercise reasonable care and skill in performing these duties for SMS as set forth in paragraph 25 above, and by:

> (a) failing to properly calculate the excise taxes and duties owed in accord with 16 U.S.C. 5001, and;
>
> (b) in failing to comply with the prior disclosure requirements of 19 U.S.C. §1592(b)(4) and 19 C.F.R. §162.74.

31. As a direct, proximate, and legal result of such professional negligence, SMS sustained damages in the form of attorneys' fees in an amount that will be proven at trial but which is believed to be in excess of $125,000.00.

WHEREFORE, SMS requests judgment against the Defendants for compensatory damages, consequential damages, interest, costs, attorneys' fees and any other relief this court deems just and proper.

### COUNT III
### (Negligence)

32. Plaintiffs realleges and incorporates by reference paragraphs 1 through 21, above.

33. As SMS's licensed customs house broker, Taylor owed SMS a duty of care to perform its services in a reasonable manner.

34. Taylor failed to exercise reasonable care and skill in performing these duties as set forth in paragraph 25 above, and by:

> (a) failing to properly calculate the excise taxes and duties owed in accord with 16 U.S.C. 5001, and
>
> (b) in failing to comply with the prior disclosure requirements of 19 U.S.C. §1592(b)(4) and 19 C.F.R. §162.74.

35. As a direct, proximate, and legal result of such negligence, SMS sustained damages in the form of attorneys' fees in an amount that will be proven at trial but which is believed to be in excess of $125,000.00.

WHEREFORE, SMS requests judgment against the Defendants for compensatory damages, consequential damages, interest, costs, attorneys' fees and any other relief this court deems just and proper.

### COUNT IV
### (Indemnity)

36. Plaintiffs realleges and incorporates by reference paragraphs 1 through 21, above.

6

37. As SMS's licensed customs house broker, Taylor owed SMS a duty to perform its services in accordance with the manner in which a reasonably careful licensed customs house broker would have under similar circumstances and in which the parties contemplated in their Agreement.

38. Taylor failed to uphold these duties as set forth in paragraphs 25, 30 and 34 above.

39. As a direct, proximate, and legal result of Taylor's failings, SMS sustained a liability to Customs of approximately $500,000.00.

40. In the process of defending against and satisfying this liability, SMS sustained damages in the form of attorneys' fees in an amount that will be proven at trial but which is believed to be in excess of $125,000.00.

WHEREFORE, SMS requests judgment against the Defendants for compensatory damages, consequential damages, interest, costs, attorneys' fees and any other relief this court deems just and proper.

## COUNT V
### (Negligent Misrepresentation)

41. Plaintiffs realleges and incorporates by reference paragraphs 1 through 21, above.

42. Taylor made the following false material representations to SMS concerning Taylor's performance of the customs house brokerage services:

> (a) That Taylor had superior knowledge and skill with regard to compliance with United States Customs statutes and regulations pertaining to the importation, classification and entering of alcohol beverages.
>
> (b) That Taylor knew how to correctly calculate all excises taxes and duties due on the importation of alcohol into the United States.

    (c) That in the event Taylor made any inadvertent errors, it/he knew how to properly correct them and that such corrections would be promptly made so as to not expose SMS to any undue liability.

43.    Taylor knew or should have known through the exercise of reasonable care that these statements were false.

44.    Taylor intended that SMS rely on these statements and contract with it to perform the customs house brokerage services.

45.    SMS did in fact rely upon the truth of these statements in entering into the agreement with Taylor.

46.    As a direct, proximate, and legal result of these misrepresentations, SMS sustained damages in the form of attorneys' fees in an amount that will be proven at trial but which is believed to be in excess of $125,000.00.

WHEREFORE, SMS requests judgment against the Defendants for compensatory damages, consequential damages, interest, costs, attorneys' fees and any other relief this court deems just and proper.

## COUNT VI
### (Fraud in the Inducement)

47.    Plaintiffs realleges and incorporates by reference paragraphs 1 through 21, above.

48.    Taylor made the following false statements to SMS concerning Taylor's performance of the customs house brokerage services:

    (a) That Taylor had superior knowledge and skill with regard to compliance with United States Customs statutes and regulations pertaining to the importation, classification and entering of alcohol beverages.

    (b) That Taylor knew how to correctly calculate all excises taxes and duties due on upon the importation of alcohol into the United States.

(c) That in the event Taylor made any inadvertent errors, it/he knew how to properly correct them and that such corrections would be promptly made so as to not expose SMS to any undue liability.

49. Taylor knew that these statements were false.

50. Taylor intended that SMS act on these statements and enter into an agreement with it/him to perform SMS's customs house brokerage services.

51. SMS did in fact rely upon the truth of these statements in entering into the Agreement with Taylor.

52. As a direct, proximate, and legal result of these misrepresentations, SMS sustained damages in the form of attorneys' fees in an amount that will be proven at trial but which is believed to be in excess of $125,000.00.

WHEREFORE, SMS requests judgment against the Defendants for compensatory damages, consequential damages, interest, costs, attorneys' fees and any other relief this court deems just and proper.

Dated: May 4th, 2001.

McGUIREWOODS LLP

By: _____
David M. Wells
Florida Bar No. 0309291
Edward M. Whelan
Florida Bar No. 0187100
Michael Cavendish
Florida Bar No. 0143774
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 (fax)
Attorneys for St. Maarten Spirits, Ltd.

9